The last case on our docket this morning is Perez v. United States. I'm sorry? Oh, I'm sorry, yes. I'm looking at the wrong thing. Your case. Sorry, I'm disorganized. I'm sorry, I'm disorganized here. May it please the court, Jay Zidell on behalf of the appellant, Sergio Leal. This case involves two issues. The way that I view it is the sub-issue is whether or not it should be sent back for a new trial because trial judge did not allow the jury to evaluate whether or not this 207-I exemption applied at all. And then there's a bigger issue. And the bigger issue is what constitutes a bona fide commission plan. And I want to speak to the latter issue first. And I'm quoting from Judge Fitzwater's order in the summary judgment. The 207-I exemption provides that all the earnings resulting from the application of a bona fide commission rate shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee. Judge Fitzwater goes on to say that the Fifth Circuit has not yet spoken on what constitutes a bona fide commission plan under this particular exemption to overtime pay. Courts in other districts have noted that by requiring that a commission rate is bona fide, the judge apparently envisions a smell test, one that reaches beyond the formal structure of the commission rate and into its actual effects and the purposes behind it. In this particular case, Sergio Leal worked as a paint prepper for the Appellee's Auto Repair business. And for the first segment of his employment, there was no problem. For the first three months back in 2015, he was paid hourly and paid overtime whenever he went past 40 hours a week. However, the issue set in when the owners decided to implement this bona fide commission plan, quote unquote. Now, exemptions under the FLSA are narrowly construed against employers. And that's because if an employer is going to deviate from regular overtime pay, they have to do so in such a fashion that unmistakably and plainly fits within the spirit of the statute. In this case, the appellees adopted this plan that just doesn't meet the smell test. I mean, I can't think of any other exemption where courts have struggled so much because there's just an absence of binding precedent on what a bona fide commission plan means that they've resulted to a smell test. And I think that really what the courts are trying to say, if I can venture to guess, is that the smell test basically means when there are too many questions about it, it doesn't plainly or unmistakably fit within the rubric that Congress envisioned when it came up with the terms bona fide commission plan as opposed to just a commission plan. In this case, we know that all of Mr. Leal's paychecks after he went on to this bona fide commission plan all said salary on them. That's what the employer wrote, salary. Didn't the employer have testimony as to why that is, whether it was generated by the computer program or something else? They came up with it. Well, it came up, I'm sure, from your viewpoint, but there is evidence. There is evidence. To support that that would not necessarily nullify that this was a commission plan. It doesn't nullify it, but it creates a question. And I'm just, my point is when there's too many questions involved, I think that that automatically translates that it can't be a bona fide commission plan. It may be a commission plan, but it's not bona fide, especially in a case like this where the employee was paid by the hour in overtime and the employer admits that it adopted this plan to at least give the employee that salary or that fixed sum going forward into the commission plan. And that's why Mr. Leal's checks throughout his employment, whether he was hourly or under the commission plan, always said salary and commission because he was always guaranteed this salary payment. Now, the employer says, well, there was no guarantee, but we can't find any instances where Mr. Leal ever made less than what Mr. Leal says was the guaranteed amount that he made under the hourly system. So that in and of itself, when there's too much of a guarantee involved, courts have found that that is indicative that it's not a bona fide commission plan. That's one of the factors. The other factor is that there was a disincentive to work more hours under this particular plan. Other district courts have said that's another factor to consider. Well, I do note that and it's certainly a legitimate point for you to make. It seems to me that what we would have to say, as I envision what this plan was trying to do, is yes, to motivate the workers who have somewhat repetitive jobs and there's some evidence that other people in this business had come up with similar sorts of incentives. But they only wanted to incentivize up to a certain level and get them to work hard and maximize their income, but they didn't want to all of a sudden be paying even more than they thought were legitimate. I don't know why that would not make it bona fide, and I'm not even sure that's what the other side is going to argue that was doing. But on the face of it, it seems to me to incentivize for a while, but not to make them drain the bank completely makes some sense. Well, it may make sense, Judge Southwick, but the problem with this particular case is that none of these cases that have ever been cited to under the underlying proceedings have ever involved a compensation scheme under which the employee was guaranteed that he would be compensated each pay period for a set number of flag hours at a certain rate with any additional hours being compensated at a sharply decreased rate. I mean, that's what sets this case apart, is that you had an employer that basically told the employee, look, you're no longer under the hourly system. I'm going to give you this set pay that I'm going to call a salary, even though the employer explains that away and why they termed it as such on all the paychecks. But once you hit a certain point, there's not only a decrease, but there's a sharp decrease. In other words, when he went over his flag hour limit, he was paid $3.50 an hour for everything above whatever that limit was, and I believe it was over 100 flag hours in a two-week period. Was the record show at all how often he was paid that $3.50? I believe it... Every pay period? Twice? Every pay period was every two weeks. The employer did not track this on a weekly basis. Understood. But is the floor... Does the evidence show the pay periods on the commission plans and for those in which this $3.50 above a certain number of hours kicked in, that what number of pay periods he actually got that $3.50 because he went over whatever the threshold was? I believe it was almost always. Almost always. I think I'm safe by saying that. I think. Underscore I think. But the bottom line is that he was working a whole lot of hours, far, far more than he got under the hourly system when he was just being paid overtime. And really what we think happened here was that it was an employer who needed the extra hours and just found a way to work these employees, including this particular appellant, very, very high and unreasonable hours and just not compensating them with the overtime law required. And that's what we find is the problem. The other issue is that the employer did not keep track of these hours on a weekly basis. And under the Act, they have to do that. The employer says, well, it wasn't practical to do that. But the statute says practicality is not the consideration. It's practicability. It's whether or not it was viable to do it. And there was no information in this record that the employer could not do it. In fact, we've cited several places in the trial record where this particular employer did say it tracked these flag hours on a weekly basis, but for some reason decided to dispose of these weekly records and therefore went to this averaging on a two-week basis. And it just doesn't meet the smell test. And certainly, if the rule that this court has followed and every other court that I know of that exemptions have to be narrowly construed against the employer, I can think of no other case in a, I mean, this is the classic case where it doesn't fit. It doesn't narrowly get fit into this little hole that the employer tried to create to evade paying overtime. Also, let me get you to move into the jury verdict and the instructions, jury verdict form and the instructions that were behind it that were given. It seems to me, I looked at the district judge's instructions to the jury, looked at the verdict form. There wasn't much explanation to the jury about what to make of the statement in one of the verdict form questions that overtime as required by law wasn't paid. Because there certainly was a lot of evidence in front of the jury that law doesn't always require overtime to be paid if you're on a commission basis or whatever else. You have cited us to the Johnson case, or maybe the other side did, that says, you know, you walk through this initially to see if overtime was not paid, and then you, which is the plaintiff's burden, and then you get into the exemption,  But I don't see that too well explained to the jury. Just sort of tell us what we should do about what you think is an improper interpretation, really by the district judge, of what these jury verdict forms are supposed to be doing. Sure. And thank you, Your Honor. And in this case, the main overtime instruction came from this court's pattern jury instructions as to what the plaintiff has to prove in order to show that he did not receive overtime pay. The issue in this case was that the party stipulated that overtime was never paid, and that the plaintiff worked over 40 hours a week. So what we think should have been done is that the district judge should have granted our motion for directive verdict on the fact that overtime was not paid and only allowed the jury to consider this exemption issue in the verdict form. That would have been the right thing to do, or at a minimum, not to condition the verdict form. We oppose this at trial, and the district judge— Condition insofar, don't answer the next question if you've answered one of them a certain way? Exactly. And that's really where the problem with this verdict form came in. Let me say, you probably haven't done this, but what struck me about this is that the verdict form itself is not, to me, I mean, it's our standard verdict form, isn't all that clear if jury's been hearing about what's been required by law and what's not. Did either one of you, in your recollection, argue to the jury about how to interpret this, or did, I just looked through them once, did the district judge describe what required by law meant, even though you have another requirement coming that's coming in the next instruction? I don't think any of you really talked to the jury about it. No, and I wasn't the trial counsel, and I'll candor for this case, but I don't believe that it was, because this was just a standard instruction that the jury's defined that the plaintiff has to prove three elements. What I want to say is I'm not surprised the jury didn't know what to do with this. Right. And now we're here trying to fix it if anything's wrong. Maybe nothing's wrong. We'll have to sort that out. We hope that you find something's wrong. But the jury verdict form should not have been conditioned. I mean, that's the... Aren't the conditions in our pattern jury instructions, I was looking at the ones that we have on our website, and those are conditioned. They're... It says if yes, then go on. Right, right. If not, skip to the next question. Right, and I think that for these type of cases where overtime is admitted that it was never paid and that overtime was always work, that that's a non-issue, that a directed verdict should be granted on that. If not, then the verdict form should say go to the next question, which is the exemption. And therefore, we don't run the risk of having to go back and having a new trial just on that exemption issue. But when you say not conditioned, do you mean it shouldn't say if yes, then do this, if no, then do that? Right. My point is that it should just say consider the exemption. But you're not arguing that in any way the district judge deviated from our pattern jury instruction? No, no. I am not arguing that. And I just think under the particular facts of this case where overtime was clearly worked, that it was a non-issue, the guy always worked, the plaintiff always worked overtime. He was never paid overtime. So why even have the jury check that question off? And if you're going to do it as the district judge, certainly let them get to the exemption issue. To show that they didn't conflate the two and that, I mean, the way that the instructions are laid out, the plaintiff has his burden of proof and then the defendant has to prove that exemption. But in this case, the jury just had no guidance whatsoever as to what to do with that second question. What if the jury had ignored all of the questions, skipped all the way to the back of the end of the form, wrote in the foreman's or presiding jury's, presiding juror's own handwriting, no liability, zero dollars? What would we do? Well, that's a very, very interesting question, Judge Oldham. I think that... Because we have to interpret, if there's any way to make sense of the jury's verdict, we're obligated to do that. Right. And I just think that because of the way that the jury verdict was laid out, I mean, had they gone to the end and just said, look, after considering all evidence in this case, we find that the plaintiff is entitled to zero, but in this case, that's not the way that the verdict was laid out. It said, did the plaintiff prove? And the plaintiff doesn't have the burden of proving these affirmative defenses, and that's why we think that at a minimum it should be reversed on that. But there's a bigger question out there, and we're hoping that the Court will find that this was not a bona fide commission plan for the reason that we've stated. Well, let me make sure I understand what you just said about the verdict form said that plaintiffs must prove. It actually is the plaintiff's burden as the plaintiff proven that the defendant failed to pay him overtime, and that's what this verdict form said. So that was an error. Is that what you were talking about? Yes. I mean, that was an error for the district judge not to grant it directly. Okay, okay. I know that point, but the instruction itself, the verdict form itself is right, that it is your burden to show that overtime was not paid. Correct. Okay, okay. Thank you very much. Thank you. May it please the Court, Brian Collins on behalf of Appalese, Chuck White, his son Brody White, and their one single body and repair shop, Magic Touch. Well, your brief did say please don't order oral argument. This is a low-budget operation. Here you are. Yes, Your Honor. Sorry about that. I am very pleased to have represented the Appalese at trial and also on appeal. They operated this body shop at a loss. They were paying all their employees hourly in overtime. They paid Mr. Leal for the first three months $16 an hour and $24 for every overtime hour. That's not in dispute. And then after checking around with other body shops, they found that there was another method that was used by most of those body shops. By the way, this, the plaintiff has stipulated that this is a retailer service establishment, so that's one of the elements of the exemption that's not in dispute. In checking around, they found that individuals were being paid by commission on a flag or hourly rate, flag hours, points, that's interchangeable. What was the effect of this? They thought that hopefully that their business would turn around and that the employees would benefit. The effect was their business turned around. They considerably increased the number of cars that were worked on the body shop, in the body shop, were then prepped by people like Mr. Leal, and then painted, and then delivered to the customers. So that was successful. And what happened to the employees? Mr. Leal was changed to a commission plan for the first eight months. Under the first commission plan, he was paid $12.80 for every 50 flag hours he earned the first week. He was paid $3.50 for every flag hour he earned after that. Your Honor, you asked a question about whether he earned more than 100 flag hours in a two-week pay period. In other words, how many hours at $3.50 did he, was he credited with? On average, for the entire time, he earned 300 flag hours. Was there a disincentive for him to continue working after he worked the first 100 flag hours at $12.80? The evidence we presented, including Defendant's Exhibit 6— Does that mean he was being paid 200 hours at $3.50 an hour? That's right. Defendant's Exhibit 6, which is not one of the three exhibits I have provided to each of you and to opposing counsel, makes clear that when he was paid hourly in overtime, $16, 24 hours overtime, and when he worked in a two-week period, the pay period, 91 hours he earned under the first commission plan, we have a two-week pay period in which he worked 91 hours, virtually identical amount of time at the shop. Did he make $1,500? No. Did he make less? No. He made $2,250 under the commission plan, half again as much. So this commission plan benefited the company and it benefited the employees. Now, there are a— I just want to respond to one comment. When it comes to weekly pay documents which were disposed of, I want to take issue with that. There was never any such issue of any documents that were ever disposed. It's not in the record. That's not true. Before addressing the bona fide exemption argument, I would like to at least run down what wasn't in dispute in this trial, what was never in dispute. It wasn't disputed that the defendants were a retail service establishment. It wasn't disputed the hours he worked. Exhibit 15D in front of you shows every single work week the number of hours. It was a biometric clock. He didn't dispute it. He said my hours are correct. It wasn't disputed the flag hours he was credited with. Every two weeks, he would turn in a piece of paper and say I work on this car. I get eight hours. I get 3.5 hours. He turned it in to his boss, Brody White. Brody White checked it out. He had to go back and check all the estimates and the repair orders to confirm that the flag hours were correct. He, Mr. Lehal, was paid based upon flag hours that were quoted to the customer in exact proportionality after spending typically about 15 hours every two weeks because they were paid on a Friday every two weeks. He spent 15 hours often working until four in the morning to complete and make sure that all of these calculations were correct. This wasn't on a computer. Was it practical for him to do that every week? No, that was the evidence on practicability. It wasn't disputed that he worked and was credited with more than 50 flag hours. Why is that important? The first 50 hours every week he gets $12.80. Now 50 times 1280 I'll represent is $640. $640 is the minimum he earned. He actually earned a lot more in each week because he worked more than just 50 flag hours. And so in response to the argument by appellants that the defendants couldn't possibly show that Mr. Leal earned more than $10.88 per hour. That's total commissions paid divided by actual hours worked. In response to that argument we have said in our brief and it's just very clear if all he earned in each week was $640 in order for him to be paid less than $10.88 per hour he would have had to have worked more than 58 hours in a week. And the document in front of you specifically Exhibit 15D lists the actual hours he worked in each of the weeks. And you'll note that nowhere does it appear that he ever worked more than 58 hours in a single week. That in and of itself even if we had to prove which is not true. Even if we had to prove it on a weekly basis we have. The court properly instructed the jury that proof of the $10.88 per hour can be used by taking the total commissions over two weeks dividing by two and then doing a calculation to compare it to the number of hours worked to see if it's always over $10.88. Your honors can do that with just the documents we have in front of you. Now, what else was not disputed? It wasn't disputed that under the three commission plans his total pay each pay period always differed. Is that symptomatic of a bona fide commission plan? Of course it is. And the court can see that by looking at plaintiffs excuse me by looking at Defendants Exhibit 15B. That's the document just for the record Record on Appeal 4973. The fifth column from the left I'm sorry, the fourth column from the left shows the commission paid in each two week pay period. Are they the same? Is this some subterfuge to pay him a salary? No, they're all different. Again, emblematic of a bona fide commission plan. What else was undisputed? On average Mr. Lehal, as I said earlier was credited with and earned approximately 300 flag hours every two week pay period. How can we know that? Look at Plaintiffs Exhibit 37 also provided to you in the folder. The fifth column from the left total flag hours. Did it ever say 100? Did he ever stop in a two week pay period after earning 50 flag hours each week? No, never says 100. So the argument that's made this commission plan is not bona fide because it creates a disincentive for anybody to continue working after the first 100 flag hours paid at $12.80. Who would consider working at $3.50 a flag hour? Well, Mr. Lehal did and he worked more efficiently and more effectively and benefited him and it benefited the organization. What else is not disputed? The fact that he testified that every dollar he received after the implementation of the first commission plan was based upon the flag hours he worked. If that isn't an admission that he wasn't paid a salary or guaranteed a salary as Judge Southup mentioned we have explained why on the pay stubs there are two numbers listed in dollar figures paid to the plaintiff. One of them appears usually under the word salary or wage and the other appears under commission. If the program allowed we would have had two commission numbers. The first at $12.80 and the second at $3.50 so that's why they broke it out. Was that testimony by the Catholics disputed? No. No testimony offered suggesting that that explanation was false. So what are they arguing? Well, they're arguing look at the pay stubs. That's enough evidence. Well, it's no evidence, Your Honor. None at all. What else is admitted? That every flag hour that he was credited with was a flag hour drawn from a repair order which was drawn from an estimate which was handed to the customer. So when Mr. Leal got paid for four hours of four hours for paint prep the estimate and what the customer ultimately paid was for four hours of paint prep. Obviously at a higher rate than what Mr. Leal was paid you need profit. So is that evidence of a commission claim? It's exact evidence of a commission claim. That's exactly what a commission claim is. Now, I mentioned that I've talked about the evidence conclusively establishes that more than $10.88 was paid to Mr. Leal. The only other factual argument they make is that or at least legal argument they make is the third element of the exemption which is that more than half of his commissions were half of his compensation were commissions. Well, there's no evidence of that. The only evidence they say is look at the pay stubs. It says salary. So obviously that's not more than half. So without any further evidence we can resort to Mr. Leal's own admissions that all of the money he received on the commission's plan were paid based upon the flag hours he received. So that's conclusively established. Now, I would like to go to the issue of the the final two issues. And before that I will say this, Your Honor. You heard testimony that Mr. Leal or at least the evidence of trial indicated that Mr. Leal was fired for extortion trying to extort somebody. And also that during the course of his employment he was not following protocol and taking the next car in line to be prepped. Why do we offer that evidence? Not to suggest he's a bad person. We offer it because when he said put cars out of line what he did was he effectively said look, customers, you may be expecting your car to be ready Thursday but it probably won't be ready Friday. Why did he take a car out of line? Because he knew that by looking at the repair order of the next car that had to be prepped by him before painting he saw that the repair order showed work that was going to give him a certain number of flag hours and he knew how much work it would take. He took another car and he found a car that was going to give him more flag hours for a little less work. That's an indication that he knew exactly how this plan worked and that in fact it did work this way just like a bonafide commission plan. Why do we offer evidence that he was fired? Counsel. Yes. We're not here on whether there's sufficient evidence to uphold the jury verdict that found the things that you are telling us. Yes. We are looking at a jury that did not find what you're telling us. How do we put it back together in a way that would allow us to use if we agree with it, we may not, if we agree with what you're telling us. I do think the Johnson case that each of you I think have discussed in your brief, at least your friend on the other side did, does say this is the way you go and the plaintiff has to prove three things including that overtime was not paid according as required by law except not really required by law if you keep going but nonetheless that's what our verdict form says and they said no, that we don't even have that issue here and you're telling us effectively that's maybe the right answer but that's not the way I think that question was properly interpreted and then they never answered the jury forum questions that would say they agreed with what you're telling us so how do we how do we affirm? Okay. Essentially this is the argument that the jury should have answered questions two, five, and eight and didn't. I believe that's the essential argument and therefore Well you're telling us there's a commission plan the only thing they've answered is that they did not fail to pay overtime as required by law. That's right. They didn't say anything about whether this was a bona fide commission plan or how that would work out and they didn't define these particular set of facts and that's what you've been telling us for the last I don't know several minutes as to what this thing was. Three things, Your Honor. First, the phrase required by law does in fact indicate that the jury had the right to and certainly did consider the only issue in this case it was a two day trial from day one the argument was the exemption applies and therefore we had no obligation to pay him overtime. That was throughout the case. There was no other issues. And so it's certainly plausible for the jury to look at that and say it's not required by law and answer it that way. Question number one and it's sister questions that relate to it say has the plaintiff proven that's the defendant's burden overall to get you to a no answer. It is But wasn't the plaintiff's burden to prove what you're now telling us. That's right. And the jury can also consider the evidence as to whether or not the exemption applied and look at it regardless of what the burden state can look at the evidence and say as they obviously did and say this is not required by law and therefore they answered the way they did. Now I would say as a second point let me say do you agree that's an inaccurate understanding of the pattern on jury instruction. I don't necessarily. You get three questions for the plaintiff's side and if overtime wasn't paid then you move to the exemptions and the defendant proves it. That's how the jury verdict form is set up and that's not the way it was used at this trial that you're defending for a civil claim. I understand and I think the distinction is had the jury form said did they fail to pay overtime the answer would have to have been yes and I would be I would not be making this argument. The form actually says it's required by law and I think that allows the jury and I do believe that during closing argument I did walk through the various questions and told them how to answer them and pointed out that it wasn't required by law because of the exemption. Now here's a second point your honor that I think is pretty important and it's somewhat ironic and that is when the jury was deliberating and when they came back initially they answered question one as to the first commission plan no they answered question four as to the second commission plan no they didn't answer question seven if you look at the document we presented the jury verdict and you flip it over you'll see they answered question eight no question eight was the exemption and the judge after reading that asked the foreperson if there was some confusion the foreperson said yes your honor we'd like to go back they went back and they came back and they crossed out number eight answer of no and initialed it and then they answered no to question number seven the third plan now is that some evidence that the jury obviously I'm not arguing that the jury said yes because they crossed out no on the exemption but it is some indication that the jury understood what it was doing when it answered no to questions one four and seven and finally your honor I think we you don't have to let's assume that you decide I don't think you should that because the jury didn't answer questions two five and eight we have to have a retry well they answered no against you they answered eight against you but then they crossed it out and initialed the cross out indicating that they had inadvertently put eight no under eight and then they put no under seven when it ultimately came back to the final review by the court but the burden of proof is still misplaced no matter how you slice it it seems to me it is on one four and seven well again so how do we have a verdict on the correct burden of proof I think the final resolution that the court can take and I think should take the reason I spent so much time focusing upon the undisputed facts and the fact that their arguments predicated upon what the pay stubs say and their arguments predicated upon the fact that we didn't calculate the commissions on a weekly basis and only on a two week pay period basis those arguments don't support a jury verdict so this court has the ability even if it says this court has the ability to         court has the ability to have a jury verdict on a weekly basis and the court has on a weekly basis on a weekly basis the case and   has the ability to have a jury verdict on the case and the court has the ability to have a jury verdict on the case and the court has the ability to have a jury    and  court  ability  have a jury verdict on the case and the court has the ability to judge a      a jury trial on a life threat case. That is not a bona fide law. Thank you for your time. Have a great day. We'll conclude the argument today. The court is adjourned until tomorrow morning. Thank you.